## Commonwealth, Department of Environmental Resources v. Harger

*Leo M. Stepanian,* for appellant.
*Patrick McGinley,* for Commonwealth.

GOLDBERG, Member of the Board: April 27, 1973. —William L. Harger and Helen Harger, his wife, appellants herein, own a large tract of land in Cherry Township, Butler County, Pa., upon which they desire to construct a mobile home park. They submitted an application to the Department of Environmental Resources (hereinafter department) for a sewage treatment plant permit. The plant was designed by appellants' engineer, Richard A. Deiss, P. E.

On October 5, 1971, the department requested additional information, which was submitted by appellants on October 22, 1971. On January 5, 1972, the department again requested additional information. This was submitted to the department on February 2, 1972.

On February 15, 1972, the department denied the permit, and appellants filed a timely appeal with the Environmental Hearing Board.

There are two basic issues to which the board must address itself in this case:

(1) Whether the department may deny a permit for

a sewage treatment plant because the design of the plant failed to include a baffle to the outlet pipe;[1] and

(2) Whether such permit may be denied because the application in question was submitted after Cherry Township adopted the Butler County Sewage Facilities Plan which was submitted to the department in December of 1970, nine months prior to the submission of the application of appellant for a sewage treatment permit.

This matter was first heard before the Hon. Gerald H. Goldberg, Member of the Environmental Hearing

---

[1] The system in question is a lagoon-type system in which solid waste would sink to the bottom of the lagoon, and clear water would be pumped from the lagoon into a stream. The pump, designated the "outlet structure," incorporates an outlet pipe one inch in diameter, through which the water flows from the pond into the stream. The baffle in question was described by Mr. Deiss as a "device to be in front of the outlet structure which would keep any floating solids from getting into the portion of the pond where the outlet structure is." It is important to note that, in requesting the addition of a baffle, the engineers for the Commonwealth gave appellant no guidelines, standards, description or other assistance in designing or constructing a device which would meet their requirements. As indicated by the findings of fact, infra, one of the reasons for such failure to specify the nature and design of the proposed baffle clearly is that the engineers for the Commonwealth had virtually no practical knowledge with respect to the nature and operation of this type of sewage treatment system, nor did they have any knowledge of any literature, standards, rules, regulations or criteria adopted by the Department of Environmental Resources or by any other agency of government, State, Federal or local, with respect thereto. As to the expressed fear that, in the absence of a baffle, floating solids might be discharged through the outlet pipe, Mr. Deiss' testimony was to the effect that should any floating solids enter the one-inch diameter pipe, the result would be that the pipe would be clogged and air would immediately enter the pipe from its upper air-intake valve, thus filling the pipe with air and, in effect, immediately blocking any discharge whatsoever through the outlet pipe.

Board, on April 11, 1972. At the conclusion of that hearing, the parties were requested to submit additional information. A second hearing was held before the board on November 21, 1972, at which time the parties stipulated that the notes of testimony taken at the initial hearing of the matter need not be transcribed and made a part of the record, for the reason that the issues raised during the course of that initial hearing are now deemed moot by all of the parties, and all of the issues presently before the board are incorporated in the record with respect to the hearing of November 21, 1972.

## Summary of Testimony

Arthur E. Hall, Jr., an engineer for the Department of Environmental Resources, testified that he recommended denial of appellants' permit because he determined a baffle was necessary on the outlet pipe from the treatment lagoon proposed by appellants. Mr. Hall started with the department in December 1971, with a degree in chemical engineering, having had no engineering experience prior to starting to work with the Commonwealth. The Harger application was only the fourth or fifth application Mr. Hall had ever seen or worked on. Mr. Hall stated that in his opinion, which was concurred in by two other engineers of the department, a baffle is necessary to prevent solids from entering the discharge pipe. Mr. Hall further stated that the department had required baffles on other systems similar to those of appellant, although he had personally never seen one. In fact, Mr. Hall had seen only one or two lagoon-type systems such as this, and had never designed one.

Mr. Hall further testified that he is not familiar with the literature, rules and regulations, standards or

criteria used by other agencies or government with respect to this type of facility, and that he had never seen an outlet design such as that in the application in actual operation, nor had he ever made an investigation outside his office as to whether or not the designed facility which has been in operation in other areas is or is not operating correctly.

There is no rule or regulation or standard of the Department of Environmental Resources which requires a baffle on this type of treatment facility and, in fact, in the past, Mr. Hall admitted that the department has approved exactly the same type of facility using the same features as those in the application. In further testimony, Mr. Hall admitted that to his knowledge there have been no violations of floating solids from any of the other sanitary sewage facilities with identical design which have been in operation since June of 1971.

Richard Arthur Deiss is a sanitary engineer, registered with the Commonwealth of Pennsylvania since 1965. He was employed by the Commonwealth of Pennsylvania in the Department of Health for five years as Chief of the Facilities Section in Meadville, Pa. His job was to review all applications such as the present application to determine whether or not they would comply with the rules, regulations and laws. During his tenure with the Commonwealth, he worked on about 600 sewage applications of various types. Since 1969, when Mr. Deiss formed a consulting engineering firm, he has personally designed about 10 sewage facilities of the same general type as appellants'.

During his tenure with the Commonwealth, Deiss was also in charge of the operations section responsible for the inspection and compliance of operating facilities. In his opinion, there is no need for a baffle

on this type of a sewage system, since, in his knowledge and experience, there has never been a violation of floating solids getting out through the outlet structure.

· The structure designed by Deiss is virtually identical to a number of other such sewage facilities designed by his firm, which have received permits from the Department of Environmental Resources, and which have exactly the same outlet design, none of these have ever been found in violation. Mr. Deiss testified that he had designed an outlet structure which will prevent floating solids from leaving the pond without the necessity of a baffle. He admitted that he could design a baffle, but such a baffle would violate some of the other requirements of the department. In fact, in Mr. Deiss' judgment, the addition of such a baffle would have an inimical effect with respect to the operation of the sewage treatment plant and would make no difference with respect to the discharge of solid matter into the stream. Although there is a considerable amount of literature on the subject of treatment plant design, and Mr. Deiss testified that he is familiar with the rules, regulations and standards of the Federal government and of those of other States, he knew of no requirement or recommendation for a baffle of the type requested by the Commonwealth.

With respect to the second basis for the department's refusal of appellants' permit, Mr. Hall testified that, in his opinion, the department had no authority to issue a permit for a sewage plant not included in a municipal plan. He stated on cross-examination that appellants' proposed sewage system was not within the Butler County Comprehensive Sewage Plan, which had been adopted by Cherry Township as its official Municipal Plan. This plan was submitted to the

Department of Environmental Resources in December 1970, and approved by the Department of Environmental Resources on June 15, 1972. As hereinbefore noted, the application here in question was submitted to the department on September 16, 1971. However, the application was not completed until the submission of additional information requested by the department on October 22, 1971, and February 2, 1972.

On later redirect examination, Mr. Hall acknowledged that there exists a procedure in the department's rules and regulations for the revision of municipal comprehensive plans.

Under the County of Butler's and Cherry Township's Sewage Facilities Plan, no sewage treatment plants are planned in Cherry Township until 1978. There is no sewage treatment plant in Cherry Township at the present time.

## FINDINGS OF FACT

1. Appellants are William L. and Helen Harger.

2. Appellants applied to the Department of Environmental Resources for a permit for a sewage treatment system on September 21, 1971, nine months before appellant submitted his application to the department in September of 1971.

3. The department has in the past approved exactly the same type of facility using the same design features as those submitted by appellant.

4. There is no rule, regulation or standard of the department which requires a baffle on appellants' sewage facility.

5. There is no rule, regulation, standard or literature of the Federal or any State government which makes reference to a baffle of the type requested by the Commonwealth.

6. The design as submitted will adequately preclude the discharge of solid matter into the stream.

7. The addition of a baffle would not make any difference with respect to the discharge of solid matter into the stream.

8. The addition of such a baffle would have an inimical effect with respect to the operation of a sewage treatment plant.

9. The facility in question is located in Cherry Township, Butler County, Pa.

10. Cherry Township is included in Butler County.

11. Cherry Township adopted the Butler County Sewage Facilities Plan nine months prior to the date of initial submission of appellants' application to the department. For this reason, it was impossible for appellants' sewage treatment facility to be included in the Cherry Township application.

12. Under the Butler County Sewage Facilities Plan approved by the department, no sewage treatment plants are planned in Cherry Township until 1978. There are no sewage treatment plants in Cherry Township at the present time.

13. There is a procedure in the rules and regulations of the department and in the law for the revision of a Comprehensive Municipal Sewage Treatment Plan.

## DISCUSSION

The purpose and express intent of the Pennsylvania Sewage Facilities Act of January 24, 1966, P. L. (1965) 1535, 35 PS §750.3, is to establish a comprehensive plan for the development of adequate sewage needs for municipalities. In the instant case, it is quite obvious that with respect to appellants, the plan adopted by Cherry Township and approved by the

department is totally inadequate to meet the needs of Mr. and Mrs. Harger. There are no sewage treatment plants in Cherry Township at the present time. Under the comprehensive plan adopted by the township, no such plant will be built until 1978. The law and the department's regulations do provide for alteration of such a plan, where such alteration is appropriate. Where, as in the instant case, it is patently obvious that such alteration is not only appropriate, but necessary to protect the interest of the citizens of the township, clearly such a procedure should be followed. To deny an application for a needed sewage treatment permit on the ground that such application was submitted subsequent to the approval of a comprehensive sewage treatment plan, and is not in conformity therewith because the comprehensive plan does not call for the construction of sewage treatment facilities until 1978, is, in our opinion, an arbitrary and improper exercise of the Department of Environmental Resources' authority.

The purpose of the law is to serve the people, and not to deprive them of needed facilities, especially where, as in the instant case, the facilities are being constructed at the expense of the citizens who need them.

With respect to the question of a baffle, we have here a situation in which a design was submitted by an experienced sanitary engineer. Mr. Deiss has had a great deal of experience, both with the Commonwealth of Pennsylvania as a reviewer of applications such as the present one, in which capacity he worked on about 600 sewage applications, and as a consulting and designing engineer, in which capacity he has designed about 10 sewage facilities similar to those of appellants.

Mr. Hall, while obviously acting in good faith, lacks

both the educational and experience qualifications of appellants' engineer. He is not familiar with the type of sewage facility designed' by appellants' engineer, he has never seen one of them in operation, as designed by appellant; he is not familiar with the literature, regulations, rules, standards and criteria used by other agencies of government with respect to this type of facility; he has made no investigation outside his office as to whether or not the facility identical to this in operation in other areas is or is not operating correctly; he is aware of no violations from any of the other sanitary sewage facilities with identical design in operation since June of 1971; he has never visited the proposed site of the sewage facility and, in brief, the weight of his opinion and testimony cannot compare with that of appellants' engineer, Mr. Deiss.

The law provides ample remedies in the event that the facility, once constructed and in operation, should cause pollution. Mr. Deiss, a reputable and experienced engineer, has testified that, in his judgment, there is virtually no possibility of such pollution. However, should such pollution occur, the department has its remedy.

In view of the foregoing, we conclude as follows:

## CONCLUSIONS OF LAW

1. The board has jurisdiction of the parties and the subject matter.

2. Appellant has complied with the provisions of the Pennsylvania Sewage Facilities Act and the rules and regulations of the department.

3. The action of the department in refusing appellant's permit is improper.

4. The facility proposed by appellant will ade-

quately protect the public health and prevent pollution.

5. Appellant is entitled to a permit in accordance with his application.

Accordingly, we issue the following

## ORDER

The Department of Environmental Resources shall issue a permit to appellants forthwith. The department shall further take such action as may be necessary and proper to cause the appropriate amendment of the County of Butler Sewage Facilities Plan, as provided by the Pennsylvania Sewage Facilities Act of January 24, 1966, P. L. (1965) 1535, 35 PS §750.1, et seq., and the department's own rules and regulations.